IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARTY HINTON,
         Plaintiff,

v.                                                 Civil Action No. 3:20cv651

ATLANTIC UNION BANK,
         Defendant.

## MEMORANDUM ORDER

This matter comes before the Court on the defendant's motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. (ECF No. 2.) The plaintiff, Marty Hinton, brings two class action claims against the defendant, Atlantic Union Bank ("Atlantic Union"). First, Hinton brings a breach of contract claim under Virginia law. Second, Hinton alleges that Atlantic Union violated the Electronic Funds Transfers Act ("EFTA") by failing to comply with 12 C.F.R. § 1005.17 ("Regulation E"). Atlantic Union argues that Hinton fails to plead a violation of Regulation E. Further, the bank says that without the EFTA claim, the Court lacks subject matter jurisdiction to consider the remaining state law breach of contract claim. Because Hinton's complaint states a claim for a Regulation E violation, the Court denies Atlantic Union's motion to dismiss.

## I. BACKGROUND

Hinton alleges that Atlantic Union violated the EFTA by failing to comply with Regulation E. Regulation E requires that, before charging overdraft fees, banks "[p]rovide[] a reasonable opportunity for the consumer to affirmatively consent, or opt in, to [the bank's overdraft] service for ATM and one-time debit card transactions." 12 C.F.R. § 1005.17(b)(1)(ii) (2020).

To accomplish this, Regulation E mandates that banks use an opt-in form that "[p]rovide[s] the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, *describing the institution's overdraft service*." *Id.* § 1005.17(b)(1)(i) (emphasis added). This separate opt-in form must be "substantially similar" to Model Form A-9, promulgated with Regulation E by the Consumer Financial Protection Bureau ("CFPB"). *Id.* § 1005.17(d). In "clear and readily understandable" language, the form must include a "brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed." *Id.* §§ 205.4(a)(1), 1005.17(d)(1).

Hinton claims that Atlantic Union charged him (and others similarly situated) two overdraft fees for one instance of overdrafting. According to Hinton, Atlantic Union's overdraft service operates as follows: When a consumer makes a debit card purchase, Atlantic Union "authorizes" the transaction, pulls the purchase amount from the consumer's account, and places it in a bank-operated checking account to await settlement with the merchant ("Transaction 1").

In the interim, as the money from Transaction 1 sits in the bank-operated checking account, the consumer makes additional purchases. But sometimes, a consumer may not have enough money in their account for these additional purchases, thereby overdrafting her account ("Transaction 2"). When Atlantic Union authorizes Transaction 2, the bank then charges the consumer an overdraft fee.

After the overdraft in Transaction 2, Transaction 1 settles; the money leaves the bank-operated checking account and goes to the merchant. At this point, because the account balance still shows insufficient funds, Atlantic Union charges a *second* overdraft fee.[1] Thus, according to

---

[1] Hinton calls these transactions "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

2

Hinton's allegations, Atlantic Union's practice sometimes results in the bank charging two overdraft fees for one instance of overdrafting, even when the bank holds enough of the consumer's money to settle Transaction 1. Hinton claims he experienced this exact scenario on December 16, 2019.

Hinton does not challenge Atlantic Union's overdraft policy; he instead challenges the adequacy of the bank's disclosure to consumers of its overdraft policy under Regulation E. By signing Atlantic Union's opt-in form, a consumer grants permission to "Atlantic Union Bank to *authorize and pay* overdrafts on [a consumer's] ATM and everyday debit card transactions." (ECF No. 3-1 (emphasis added).) The form states only that the bank "will charge [the consumer] a fee of up to $36 each time [the bank] pay[s] an overdraft" and that the bank "limits the total number of combined Overdraft and Non-Sufficient Funds fees to 6 per business day." (*Id.*) Hinton signed a copy of Atlantic Union's opt-in form on September 20, 2019. (*Id.*)

Hinton argues Atlantic Union's opt-in form is inadequate because it suggests the bank will charge overdraft fees only when the overdraft transaction is "'authorized and paid' into a negative account balance." (ECF No. 1, ¶ 33.) He alleges that Atlantic Union violated Regulation E by charging overdraft fees at the point of both authorization and settlement without disclosing this practice in its opt-in form.

## II. DISCUSSION[2]

### *A. The Safe Harbor Provision*

Atlantic Union counters that, because it used the CFPB's Model Form A-9 when drafting its own opt-in form, the safe harbor provision in 15 U.S.C. § 1693m(d)(2) protects the bank from

---

[2] The defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the

3

liability. The safe harbor provision protects a bank from liability when the bank fails "to make disclosure in proper form if [the bank] utilized an appropriate model clause issued by [the CFPB.]" Atlantic Union's opt-in form represents a "virtual carbon copy" of the CFPB's Model Form A-9 in both its form and substance. (ECF No. 3, at 9.) The inquiry, Atlantic Union argues, should end there.

But this argument fails to consider the statute's language. The safe harbor provision protects a bank from liability only when it makes its "disclosure in proper *form*." 15 U.S.C. § 1693m(d)(2) (emphasis added). Hinton, however, does not object to the *form* of Atlantic Union's disclosure; he objects to the alleged inadequacy of its *content*. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1245 (11th Cir. 2019) (distinguishing between a claim alleging a "failure to make an adequate disclosure[]" and a "failure to make the disclosure 'in proper form'"). Contrary to Atlantic Union's position, even if the opt-in form resembles Model Form A-9, Regulation E still requires that the bank's opt-in form accurately describe its overdraft policy. *Gunter v. United Fed. Credit Union*, No. 3:15cv483, 2017 WL 4274196, at *3 (D. Nev. Sept. 25, 2017) (stating that a description that is "accurate and not misleading . . . . would not destroy substantial similarity" and "would further the purpose of the regulation to help consumers understand the overdraft services their financial institutions offer"). The vast majority of courts to

---

claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

consider the applicability of the safe harbor provision in challenges to the adequacy of bank disclosures have also adopted this approach.[3]

Simply put, the safe harbor is inapposite to the type of claim Hinton raises here—one challenging the adequacy rather than the form of the disclosure. The provision, therefore, does not provide safe harbor to Atlantic Union.

### B. Hinton Plausibly Pleads a Regulation E Violation

Hinton's complaint plausibly asserts a violation of Regulation E. To satisfy Regulation E, a bank's opt-in form must include a "brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed." 12 C.F.R. § 1005.17(d)(1). Hinton claims that Atlantic Union's opt-in form fails to meet this standard because it "misconstrue[s] Atlantic Union's true debit card processing and overdraft practices." (ECF No. 1, ¶ 36.) To support this argument, Hinton points to the "authorize and pay" phrasing in the opt-in form: instead of charging overdraft fees *only* at the point of authorization, Atlantic Union allegedly charges fees at both the point of authorization *and* settlement. Indeed, the opt-in form does not mention this practice.

By alleging that Atlantic Union's opt-in form does not describe the bank's actual overdraft practice, Hinton's complaint plausibly pleads a violation of Regulation E.[4] Under Hinton's

---

[3] *See, e.g., Tims*, 935 F.3d at 1245; *Salls v. Digit. Fed. Credit Union*, 349 F. Supp. 3d 81, 91 (D. Mass. 2018); *Walbridge v. Ne. Credit Union*, 299 F. Supp. 3d 338, 349 (D.N.H. 2018); *Gunter*, 2017 WL 4274196, at *3; *Smith v. Bank of Haw.*, No. 16-00513, 2017 WL 3597522, at *8 (D. Haw. Apr. 13, 2017); *Walters v. Target Corp.*, No. 3:16cv1678, 2017 WL 3721433 (S.D. Cal. Feb. 14, 2017); *Ramirez v. Baxter Credit Union*, 2017 WL 118859, at *7 (N.D. Cal. Jan. 12, 2017); *Pinkston-Poling v. Advia Credit Union*, 227 F. Supp. 3d 848, 852 (W.D. Mich. 2016); *see also Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 151 (D. Mass. 2005).

[4] *See, e.g., Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 495–96 (E.D.N.Y. 2020); *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 376 (D. Conn. 2018); *Walbridge*, 299 F. Supp. 3d at 348; *Pinkston-Poling*, 227 F. Supp. 3d at 856–67.

argument, Atlantic Union's opt-in form is, at best, ambiguous. *See Pinkston-Poling*, 227 F. Supp. 3d at 856–67 (denying a Rule 12(b)(6) motion to dismiss when the plaintiff plausibly alleged the language within the defendant bank's disclosures was "at least ambiguous"). Accepting these allegations as true, the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hinton's Regulation E claim, therefore, stands.[5]

## CONCLUSION

For the foregoing reasons, the Court DENIES the defendant's motion to dismiss.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 2 November 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[5] Hinton's Regulation E claim provides the Court with supplemental jurisdiction to decide his accompanying state law claims. *See Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). Thus, because Hinton's Regulation E claim survives, so does his breach of contract claim.