**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

**MARTY HINTON,**

    individually and on behalf of all other
    similarly situated individuals,

        Plaintiff,

v.

**ATLANTIC UNION BANK**,

      Defendant.

Civil Action No. 3:20-cv-00651-JAG

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED**

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 2

III.   SETTLEMENT TERMS ......................................................................................... 2

    A.     Settlement Class ............................................................................................. 4

    B.     Settlement Benefits ........................................................................................ 4

        1.     Cash Benefits ........................................................................................ 4

        2.     Injunctive Relief ................................................................................... 4

    C.     Settlement Administrator and Settlement Administration Costs ................... 6

    D.     Proposed Notice Program .............................................................................. 6

    E.     Release ........................................................................................................... 7

    F.     Opt-Outs and Objections ............................................................................... 8

    G.     Attorneys' Fees, Costs and Service Award .................................................... 8

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL ................................ 9

V.     ARGUMENT ........................................................................................................ 11

    A.     The Court should preliminarily approve the Settlement. .............................. 11

        1.     The Settlement is fair. ......................................................................... 11

        2.     The Settlement is adequate and reasonable. ....................................... 15

        3.     The Settlement is an outstanding recovery for the Settlement Class. ........ 16

    B.     The Court should grant conditional certification of the Settlement Class. ............ 18

        1.     The Settlement Class satisfies the requirements of Rule 23(a). ................ 18

        2.     The Settlement Class also satisfies the requirements of Rule 23(b)(3). ............ 20

    C.     The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g) ..... 22

    D.     The Court should approve the Notice Program ............................................. 23

VI.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) .................................. 18, 20, 21, 22

*Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) ........................................................................................................ 13

*Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ........................................ 19

*City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ......................... 17

*Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *5 (S.D.W.Va. May 23, 2013) ................................................................................................................ 14

*Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015) ....................................................................................................................... 21

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ....................................................... 23

*Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) ................................... 19

*Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ........................................................ 17

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004) ......................................... 10

*Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003) ...................................... 10, 20

*Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W.Va. 2002) ......................................... 16

*Herrera v. Charlotte School of Law, LLC*, --- Fed. App'x ---, 2020 WL 3118494, at *8 n.4 (4th Cir. 2020) ................................................................................................................. 10

*In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013) ...................................................................................................... 14

*In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016) ................................ 9

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) .................................... 9, 10, 11, 15

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020) .................................................... 10

*In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654, 660 (E.D. Va. 2001) ........ 17

*In re NeuStar, Inc. Securities Litig.*, No. 1:14CV885 JCC/TRJ, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015) ................................................................................................ passim

*In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ................ 14, 15, 18

*In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *5 n.9 (D. Md. Sept. 12, 2013) .......................................................................................................... 14

*Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) ............. 21

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ............................................... 19

*McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992) ........................................................ 19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ...................................................... 23

*Sanchez v. Lasership, Inc.*, No. 1:12-cv-246 (GBL-TRJ), 2014 WL 12780145, at *1 (E.D. Va. Aug. 8, 2014) ............................................................................................................. 14

*Solomon v. Am. Web Loan, Inc.*, No. 4:17cv145, 2020 WL 3490606, at *4 (E.D. Va. June 26,

2020) ............................................................................................................... passim

*Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) ................................ 21

*Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 WL 1148283, at *5 (E.D. Va. Jan. 9, 2017) ............................................................................................................... 13

**Statutes**

12 C.F.R. § 1005.17 ......................................................................................................... 2

Federal Electronic Funds Transfer Act ..................................................................................... 2, 3

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... 1, 10, 20

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 18

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 19

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 20

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 1, 10, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 23

Fed. R. Civ. P. 23(e). ............................................................................................ 9, 10, 13, 24

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 23

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................. 14

Fed. R. Civ. P. 23(e)(2)(B) .................................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................... 11, 16

Fed. R. Civ. P. 23(e)(2)(C)-(D) .............................................................................................. 16

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................................. 22

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................................. 22

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 11

**Treatises**

Newberg on Class Actions § 15:73 (5th ed.) ............................................................................. 13

## I.     INTRODUCTION

Plaintiff Marty Hinton, on behalf of himself and a proposed class of current and former members of Defendant Atlantic Union Bank, respectfully submits this memorandum in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement[1]—which was the result of hard-fought, arms' length negotiations between experienced counsel and facilitated by United States Magistrate Judge John F. Anderson—provides substantial monetary and non-monetary relief for the benefit of the Settlement Class. The Settlement includes Atlantic Union's agreement to pay $1,600,000.00 into a common fund and to separately pay all Settlement Administration Costs. Further, Atlantic Union has agreed to modify its account agreement to better inform its members, resulting in significant prospective financial savings. One of the hallmark components of the Settlement is that Settlement Class Members will not have to file claim forms to receive the Settlement's benefits. Consequently, the Settlement is an excellent recovery, particularly in light of the continued litigation risks and delays faced by Plaintiff and the putative class. As explained below, the Settlement terms are well within the range of reasonableness and are consistent with applicable law. The Settlement satisfies all Fourth Circuit criteria for Preliminary Approval.

Accordingly, Plaintiff respectfully requests that this Court enter an order that will: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff Hinton as Class Representative; (4) approve the Notice plan set forth in the Agreement and approve the form and content of the Notices; (5) approve and order the opt-out and objection

---

[1] The capitalized terms in this Memorandum have the same meaning as the capitalized terms in the Settlement Agreement, attached as *Attachment 1*.

procedures set forth in the Agreement; (6) stay all deadlines in the Action against Atlantic Union pending Final Approval of the Settlement; (7) appoint as Class Counsel the law firms and attorneys identified herein; and (8) schedule a Final Approval Hearing.

## II.    BACKGROUND

On January 22, 2020, Marty Hinton joined a proposed class action initially brought by Plaintiff Gennifer Townsley against Atlantic Union Bank, alleging that Atlantic Union breached its contract with customers, including the covenant of good faith and fair dealing by, among other things, allegedly abusing the contractual discretion it granted to itself when it charged overdraft fees on debit card transactions that were authorized on sufficient, positive funds ("APPSN Transactions"). Defendant filed a motion to sever Plaintiff Hinton's "APPSN" claims from the claims brought by Plaintiff Townsley.  The Court heard oral argument on the motion, in person, on August 13, 2020.  On August 20, 2020, the Court granted the motion to sever.[2]

On August 26, 2020, Plaintiff Hinton filed his separate Complaint and added a new claim that Atlantic Union violated the Electronic Funds Transfer Act ("EFTA") by allegedly failing to comply with the opt-in requirements of 12 C.F.R. § 1005.17, including allegedly failing to provide Atlantic Union customers with a valid description of its overdraft program that meets the strictures of 12 C.F.R. § 1005.17 and because Atlantic Union's opt-in methods fail to satisfy 12 C.F.R. § 1005.17 because they allegedly misrepresent Atlantic Union Bank's overdraft practices. Plaintiff Hinton proposed a class claim on behalf of an "APPSN Class" alleging that Atlantic Union breached its contract with customers, including the covenant of good faith and fair dealing by allegedly abusing the contractual discretion it granted to itself when it charged overdraft fees on

---

[2] Atlantic Union and Ms. Townsley separately resolved the claims brought solely by Ms. Townsley.

APPSN Transactions.

Atlantic Union moved to dismiss the Complaint on September 9, 2020, arguing that Plaintiff failed to state a claim under the EFTA and that the Court did not have subject matter jurisdiction over Hinton's remaining breach of contract claim.  On November 2, 2020, the Court denied that Motion in its entirety. Defendant then answered the complaint.

Subsequently, the Parties began an extensive discovery effort.  *Attachment 2, Declaration of Jeffrey Kaliel*, ¶ 35.

The Parties agreed to a mediation on July 1, 2020, before Judge Anderson, a United States Magistrate Judge of this Court. Kaliel Decl. ¶ 13. Before mediation, the Parties exchanged mediation briefs and provided confidential mediation statements to Judge Anderson. *Id.* ¶ 14. Also, Atlantic Union provided proposed Class Counsel with sample account-level transactional data for the proposed Settlement Class, from which Plaintiff's expert extrapolated estimated class-wide damages for the proposed Class Period. *Id.* ¶ 15.

On March 11, 2021, the Parties met for a settlement conference before Judge Anderson. *Id.* ¶ 16.  Class Counsel entered the mediation fully informed of the merits of Settlement Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiff and Settlement Class Members. *Id*. at ¶ 17.  U.S. Magistrate Judge Anderson actively supervised and participated in the settlement discussions. The Parties made some progress but were unable to reach a settlement that day. *Id.* ¶ 18. However, the Parties continued to negotiate with the assistance of Judge Anderson.  The Parties met with Judge Anderson for another settlement conference on March 18, 2021. *Id.* ¶ 19. Again, progress was made but no settlement was reached. *Id*. ¶ 20.  Then again on April 20, 2021—after further data analysis was done by the Parties—the Parties met with Judge Anderson for a further settlement conference. *Id*. ¶ 21.  At that time, the

Parties reached an agreement in principle on the terms of a settlement. *Id.* The Parties then worked over the following three months to document a full Settlement Agreement, devise a notice plan and Notices, and prepare a preliminary approval filing. *Id.*

## III.   SETTLEMENT TERMS

### A.   Settlement Class

The Settlement will resolve the claims of the Settlement Class, defined as:

> All persons who hold an Atlantic Union checking account who, at any point from January 1, 2014 through July 1, 2021, were charged an overdraft fee on a debit card transaction that was approved on positive funds but later settled onto negative funds.

*See* Agreement § 4.1.1.

The Settlement Class does not include Defendant; Defendant's subsidiaries and affiliates; Defendant's officers, directors, and members of their immediate families; any entity in which Defendant has a controlling interest; and Defendant's attorneys, Named Plaintiff's attorneys, and any Judge overseeing or considering the approval of the Settlement together with members of their immediate family. *Id.*

### B.   Settlement Benefits

The Settlement provides meaningful immediate relief to Settlement Class Members in the form of direct cash payments and future injunctive relief.

#### 1.   Cash Benefits

Atlantic Union has agreed to establish a $1,600,000.00 cash Settlement Fund for the benefit of the Settlement Class and to separately pay all Settlement Administration Costs—a substantial expense that is ordinarily borne by the Settlement Class. *Id.* §§ 4.3.1, 4.2.6. The Settlement Fund will be used to pay Settlement Class Member Payments, any attorneys' fees and costs that the Court may award to Class Counsel, and any Service Award. *Id.* § 4.3.1.

Settlement Class Members do not need to submit a claim form in order to receive a payment. The Settlement Fund will be distributed to Settlement Class Members according to the distribution plan set out in the Agreement, which is to provide *pro rata* payments to each Settlement Class Member. *Id.* § 5.3.1.

Settlement Class Member Payments to Current Account Holders will be made first by crediting their accounts or, if not feasible or reasonable to make a payment by a credit, by check. *Id.* Atlantic Union will bear any costs associated with implementing the account credits and notifying Settlement Class Members who are Current Account Holders of any credit on the account statement. *Id.* Former Account Holders will receive their Settlement Class Member Payments by check. *Id.* If any amounts remain in the Net Settlement Fund due to uncashed or returned checks after 180 days, these remaining funds shall be paid to a non-profit entity agreed upon by the Parties and approved by the Court, as a *cy pres* award.

There will be no reversion to Atlantic Union.

### 2. Injunctive Relief

In addition to direct cash payments, Settlement Class Members will receive significant benefits in the form of injunctive relief. Specifically, Atlantic Union has agreed to revise its account agreement and related documents to clarify when "APPSN" Overdraft Fees may be assessed. Agreement § 4.3.2. This practice change will inure to the benefit of the Settlement Class, other Atlantic Union members, and future Atlantic Union members who will be better able to understand when fees will be assessed to their accounts. Kaliel Decl. ¶ 29.

**C.      Settlement Administrator and Settlement Administration Costs**

The proposed Settlement Administrator is Angeion Group, a nationally recognized and experienced class action administrator. Kaliel Decl. ¶ 21. Atlantic Union has agreed to separately pay the costs of the Notice Program and administration, providing an additional benefit to the Settlement Class apart from the Settlement Fund. Agreement § 4.2.6.

**D.      Proposed Notice Program**

The Parties' proposed Notice Program is designed to reach as many Settlement Class members as possible and is the best notice practicable under the circumstances. Kaliel Decl. ¶ 22. Atlantic Union will provide to Class Counsel a proposed class list of Settlement Class Members, based on Defendant's review of the data and the transaction history for Atlantic Union customers. SA § 4.2.1. Class Counsel will verify its accuracy, then provide the class list to the Settlement Administrator for notice purposes. *Id.*  Thus, within 60 days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall implement the Notice Program. *Id.* § 4.2.3. Notice shall be provided through the following means: (1) Postcard Notice to Account Holders for whom Atlantic Union does not have a valid email address; and (2) Long Form Notice, which will be available on the Settlement Website and which the Settlement Administrator will mail to Settlement Class members who request it. *Id.* § 62. The Postcard Notice and Long Form Notice shall be substantially in the forms attached to the Motion for Preliminary Approval as *Attachment 3, Exhibit A* hereto.

In addition, the Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement and case-related documents. *Id.* § 4.2.4.

The Notice includes, among other information, a description of the Settlement's material terms; a date by which Settlement Class members may exclude themselves from, or "opt-out" of,

the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the scheduled Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Attachment 3, Exhibit A.*

For up to forty-five (45) days following the mailing of the Notice via U.S. Mail (if applicable), the Settlement Administrator will re-mail the Notice via standard U.S. Mail, postage prepaid, to those Settlement Class Members whose notices were returned as undeliverable to the extent an alternative mailing address can be reasonably located. The Settlement Administrator will first attempt to re-mail the Notice to the extent that it received an address change notification from the U.S. Postal Service. If an address change notification form is not provided by the U.S. Postal Service, the Settlement Administrator may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address. Agreement § 4.2.3.

### E.    Release

The Settlement Class Member Release is narrowly tailored. As of the Effective Date of the Settlement, Plaintiff and each Settlement Class Member will be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from all claims, rights, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever arising before the Effective Date whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which he or she ever had or now has, arising out of, or regarding the imposition or payment of overdraft fees on a debit card transaction that was approved on positive funds but later settled onto negative funds, the alleged failure to receive a valid description of Atlantic Union's overdraft program, or assessing overdraft fees without

obtaining affirmative consent to do so.

### F.      Opt-Outs and Objections

The Notices will all inform Settlement Class Members of their right to opt-out and deadline to do so. *Attachment 3, Exhibit A*, hereto.  Settlement Class Members may opt-out of the Settlement Class at any time prior to the Opt-Out/Objection Deadline, which shall be sixty (60) days after Notice is provided.  Agreement § 4.4.4.1

The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and/or Service Award. *Id.* § 4.4.4.4. Objections must be mailed to the Settlement Administrator. *Id.* Objections must be submitted no later than the last day of the Opt-Out/Objection Deadline. *Id.* Objections must include: (1) the Settlement Class Member's full name, address and current telephone number; (2) if the individual is represented by counsel, the name and telephone number of counsel; (3) all objections and the basis for any such objections stated with specificity, including a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (4) the identity of any witnesses the objector may call to testify; (5) a listing of all exhibits the objector intends to introduce into evidence at the Final Approval Hearing, as well as true and correct of copies of such exhibits; and (6) a statement of whether the objector intends to appear at the Final Approval Hearing, either with or without counsel.  *Id*.

### G.      Attorneys' Fees, Costs and Service Award

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred. Kaliel Decl. ¶ 28. The Settlement Agreement provides that Class Counsel separately will apply for an award of attorneys' fees, costs, and expenses. *See* Agreement § 5.3. Atlantic Union has agreed not to oppose a request for fees up to 33.33% of the value of the

Settlement and a request for reimbursement of reasonable litigation costs. *Id.* Such award will serve to compensate for the time, risk and expense Plaintiff's counsel incurred pursuing claims on behalf of the Settlement Class. However, if the Court does not approve an award of fees or costs, in whole or in part, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

Class Counsel will also ask the Court to approve a Service Award of $7,500.00 for the Plaintiff in recognition of his service as Class Representative. *Id.* § 5.3. Atlantic Union does not oppose the request. *Id.* However, if the Court does not approve the Service Award, that will not prevent the Settlement from becoming effective nor shall it be grounds for termination. *Id.*

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is fair and adequate. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). The relevant factors in determining "fairness" are "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Jiffy Lube*, 927 F.2d at 159; *see also Solomon v. Am. Web Loan, Inc.*, No. 4:17cv145, 2020 WL 3490606, at *4 (E.D. Va. June 26, 2020). Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial,

(3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159.[3]

Where, as here, a class settlement is reached before the Court certified a class, the plaintiff may also seek certification of a settlement-only class. *Solomon*, 2020 WL 3490606, at *1 (citing *In re NeuStar, Inc. Securities Litig.*, No. 1:14CV885 JCC/TRJ, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015)). The certification of a settlement-only class requires a showing that the Rule 23 factors are satisfied. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004). Thus, the plaintiff must show that the Rule 23(a) factors are met: numerosity, commonality; typicality; and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003). And where, as here, the plaintiff seeks preliminary certification of a settlement class under Rule 23(b)(3), the plaintiff must show that the questions of law or fact common to class members predominate over questions affecting only individual class members, and that a class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *In re Neustar*, 2015 WL 567498, at *3. The Court resolves these issues using the

---

[3] The 2018 amendments to Rule 23 also provide specific guidance to federal courts considering whether to approve a class settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate a court to consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, --- Fed. App'x ---, 2020 WL 3118494, at *8 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

preponderance of the evidence standard. *In re Neustar*, 2015 WL 567498, at *3.

## V.   ARGUMENT

### A.   The Court should preliminarily approve the Settlement.

A preliminary review of the fairness and adequacy factors demonstrate the Settlement warrants Preliminary Approval under Rule 23(e)(2). The Settlement was negotiated in the absence of collusion and is the result of good-faith, informed, arms'-length negotiation between experienced and sophisticated counsel, in conjunction with a Magistrate Judge of this Court. Kaliel Decl. ¶¶ 29, 40.

Any settlement requires the parties to balance the merits of the claims and defenses asserted and the attendant risks of continued litigation and delay. While Plaintiff strongly believes in his claims, Atlantic Union asserted a number of defenses and arguments that, absent settlement, raised significant risk of affecting any recovery for himself and the Class. *Id.* ¶ 32. This also highlights the risk to the class in proceeding absent settlement: Atlantic Union disputed whether Plaintiff would be able to successfully certify a class on a litigation basis. *Id.*

#### 1.   The Settlement is fair.

As noted above, when evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel. *In re Jiffy Lube*, 927 F.2d at 159.

***Posture of the case.*** The Settlement was reached only after significant work was conducted. *See Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(C)(i). Class Counsel performed significant research on Atlantic Union, its OD Fee assessment practices, and consumer complaints—even before filing the case.   Kaliel Decl., ¶ 34.   Class Counsel thoroughly

11

investigated Plaintiff's claims; prepared and filed the Complaint; briefed and argued Atlantic Union's two Motions to Dismiss; and, after the Court granted the motion, began an extensive discovery effort, including Requests for Production, Interrogatories, and negotiation of an ESI protocol and search terms. Kaliel Decl. ¶ 35. Class Counsel has also reviewed data regarding the "APPSN" Overdraft Fees charged to the Settlement Class and provided in settlement communication by Atlantic Union. *Id.* ¶ 36. Class Counsel worked closely with a well-qualified data expert who spent hours analyzing the account-level transactional data provided by Atlantic Union.

Class Counsel expended significant resources researching and developing the legal claims at issue. *Id*. at ¶ 37. Class Counsel is familiar with the claims as they have litigated and resolved cases with similar factual and legal issues. *Id*. Class Counsel has experience in understanding the remedies and damages at issue, as well as what information is critical in determining class membership. *Id*. Class Counsel spent a significant amount of time analyzing information regarding the alleged PD Fee assessment practice.

The Parties also engaged in extensive, good-faith, arms'-length negotiations via mediation, including the mediation efforts that eventually led to the Settlement. *Id.* Judge Anderson, a well-respected Magistrate Judge of this Court, oversaw three separate Settlement Conferences. These "adversarial encounters dispel any apprehension of collusion between the parties." *In re Neustar, Inc.*, 2015 WL 5674798, at *10 (finding that where plaintiff "filed an amended complaint, argued at the motion to dismiss stage, noticed an appeal, and engaged Defendants in settlement mediation," the posture of the case supported preliminary approval). This action has been appropriately litigated by the Parties, and both sides have obtained sufficient information to assess the relative strength of their respective claims and defenses.

***Extent of discovery.*** Second, and relatedly, the Parties did engage in extensive formal discovery prior to finalizing the Settlement, as described above. Kaliel Decl. ¶ 35.

***Circumstances surrounding negotiations.*** The circumstances surrounding the Parties' negotiations demonstrate that the Settlement was reached through arms'-length negotiations. *See Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(B). The Parties participated in multiple settlement conferences before Magistrate Judge Anderson. These arms'-length negotiations led to a fair Settlement. *See, e.g.*, *Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair where it was reached "under the supervision and direction" of a Magistrate Judge).

The terms of the proposed award of attorneys' fees and Service Award are also fair and demonstrate that the Settlement is the product of arms'-length negotiations. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). The Parties did not discuss attorneys' fees or a Service Award until after agreeing upon the Settlement's material terms. The amounts sought for attorneys' fees, costs, and expenses and a Service Award for Plaintiff are also reasonable and fair. The Settlement Agreement authorizes Class Counsel to seek an award of up to 33.33% of the value of the Settlement and a request for reimbursement of reasonable costs, an amount that is well within the range of approval. The Agreement also authorizes Plaintiff to seek a Service Award of $7,500.00. These amounts are well within the range of approval for class action settlements. *See, e.g.*, *Bicking*, 2011 WL 5325674, at *2, *5 & n.6 (preliminarily approving class settlement providing for service award of $5,000); *Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 WL 1148283, at *5 (E.D. Va. Jan. 9, 2017), *report and recommendation approved in* 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) (awarding fees of 33.33% and noting that "any discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under

13

most contingency agreements. Newberg on Class Actions § 15:73 (5th ed.). Consequently, a fee award of one-third of the settlement fund would be consistent with that awarded in other cases"); *Sanchez v. Lasership, Inc.*, No. 1:12-cv-246 (GBL-TRJ), 2014 WL 12780145, at *1 (E.D. Va. Aug. 8, 2014) (approving fee award "representing one-third of the common settlement fund"); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *5 (S.D.W.Va. May 23, 2013) (recognizing the "presumptive reasonableness" of a fee award of one-third of the common fund); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *5 n.9 (D. Md. Sept. 12, 2013) ("[A] one-third contingent fee arrangement is a standard practice in this country, and Class Counsel's intention to request that portion of the settlement fund as attorneys' fees does not shock the Court.").

 ***Experience of counsel.*** Class Counsel is highly experienced in consumer class action litigation, as demonstrated by their firm resumes, and have brought that significant experience to bear in litigating and settling this case. *See* Kaliel Decl. ¶¶ 2-12, Exs. A-C. *See also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving overdraft fees, non-sufficient fund fees, and other bank fees. *Id.* ¶ 3. Counsel "may be evaluated by their affiliation with well-regarded law firms with strong experience in the relative field," and by any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc.*, 2015 WL 5674798, at *11 (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013)). Based on their experience, Class Counsel endorse the Settlement as fair and adequate. *Id.* ¶ 4. Courts afford substantial consideration to the view of Class Counsel in considering whether a class settlement is fair. *See In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) (stating that it is "entirely warranted" for the court to "pay heed

to" the judgment of experienced class counsel).

###        2.        The Settlement is adequate and reasonable.

In assessing the adequacy of the Settlement, the Court looks to (1) the relative strength of the merits of the plaintiff's claims; (2) the existence of any difficulties of proof or strong defenses the plaintiff will encounter at trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery; and (5) the degree of opposition to the Settlement. *In re Jiffy Lube*, 927 F.2d at 159. Each of the relevant factors is satisfied.[4]

***Relative strength of the claims / Difficulties of proof.*** The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills*, 265 F.R.D. at 256. Plaintiff is confident in his claims, but Atlantic Union has raised numerous defenses. Atlantic Union will continue to dispute the factual and legal bases for the suit. The existence of these numerous disputed factual and legal issues creates uncertainty and risk for all parties, warranting approval.

***Duration and expense of continued litigation.*** The likely duration and expense of continued litigation are substantial. Kaliel Decl. ¶ 26. The Parties will need to complete discovery, including written discovery, document review, expert discovery and depositions. Plaintiff will need to brief class certification, and Atlantic Union may file at least one motion for summary judgment. And of course, the expense and burden of trial will be substantial. This case will potentially continue for one or two more years should it not settle now, at continued expense to the class—without any guarantee of additional benefit. Thus, "a settlement avoids returning the

---

[4] The fifth factor cannot be evaluated until after the Court authorizes Notice to be disseminated to the Settlement Class.

case to this Court for class and merits discovery, class certification, summary judgment, trial, and further appeals," a factor that weighs in favor of approval. *Solomon*, 2020 WL 3490606, at *5; *see also In re Neustar, Inc.*, 2015 WL 5674798, at *12 (granting preliminary approval where "if plaintiffs succeed on appeal, the case must proceed to the costly procedures of class certification, discovery, summary judgment, and trial before any putative class members may recover"). *Accord* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor, thus, favors approval.

**Solvency of the Defendant.** There is no indication that Atlantic Union will be unable to satisfy a judgment, but the fourth factor is "largely considered beside the point given the other factors weighing in favor of preliminary approval." *Solomon*, 2020 WL 3490606, at *5 (quoting *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W.Va. 2002)). Continued litigation would be expensive and consume significant resources of the parties and the Court. Thus, on balance, the risks, delays, and costs associated with further litigation weigh in favor of Preliminary Approval.

### 3. The Settlement is an outstanding recovery for the Settlement Class.

The Settlement provides an excellent result for the Settlement Class and treats the Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D). Despite the Court's order granting Atlantic Union's Motion to Dismiss, Class Counsel successfully negotiated (1) a $1,600,000 common fund that will provide cash payments directly to Settlement Class Members, without any claims process, (2) changes to Atlantic Union's account agreement, and (3) the costs of Settlement Administration to be borne separately. The common fund and Settlement Administration Costs represent between 40-57% of best-case damages for Settlement Class Members, depending on whether the Court ultimately adopted Plaintiff's damages methodology or that of Defendant. In light of the ligation risks described above, any of which could mean Settlement Class Members would get nothing, this is an outstanding result.

Indeed, courts in this Circuit routinely grants final approval to settlements providing

16

between as low as 5-15% of maximum potential damages. *See In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654, 660 (E.D. Va. 2001) (order approving settlement amounting to approximately 13.9% of the maximum recovery at the time of judicial approval in securities fraud class action); *In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d at 842 n.3 (order approving settlement amounting to approximately 15% of the possible recovery in securities fraud class action); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 833 (E.D.N.C. 1994) (order approving settlement amounting to 5% of plaintiffs' estimated loss in securities class action); *see also Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ("And because the cash settlement 'may only amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair." (citing *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")). Where, as here, Plaintiff faced significant litigation risk, the Settlement will provide meaningful tangible benefits to Settlement Class Members.

The allocation of the Settlement is also fair and reasonable, and the manner of administering relief will be effective. Settlement Class Members will receive payments directly either via direct deposit or a check, in a *pro rata* amount that is adjusted to reflect the number of "APPSN" Overdraft Fees paid. The amount that each Settlement Class Member receives is based on objective criteria that apply to each Settlement Class Member equally. No Settlement Class Member will be treated more favorably than any other.

Similarly, the injunctive relief will equally apply to all Settlement Class Members (and all current and former Atlantic Union members). The injunctive relief is a significant benefit and will allow Atlantic Union members and future members to choose with whom to bank in a fairer

marketplace for banking services. This change will result in additional savings for Atlantic Union members. Even if Plaintiff prevailed at trial, as a private litigant Plaintiff would have been unable to demand that Atlantic Union stop charging "APPSN" Overdraft Fees. By agreeing to modify its disclosures, Atlantic Union has agreed to the only injunctive relief Plaintiff would have been able to obtain had she prevailed at trial.

In addition, as another important Settlement benefit, Atlantic Union agrees to bear the cost of notice and administration separate and apart from the $1.6 million common fund. This, too, is valuable, saving the class likely tens of thousands of dollars in notice costs.

In sum, the Settlement benefits are excellent, especially considering the procedural posture of this case and the hurdles the class faced.

**B.    The Court should grant conditional certification of the Settlement Class.**

Certification for settlement purposes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re The Mills*, 265 F.R.D. at 266. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the proposed Settlement Class satisfies all Rule 23(a) and Rule 23(b)(3) requirements.  For purposes of this Settlement only, Atlantic Union does not oppose class certification. The Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Accordingly, Plaintiff requests that the Court conditionally certify the Settlement Class.

**1.    The Settlement Class satisfies the requirements of Rule 23(a).**

**a.    Numerosity is satisfied.**

Rule 23(a)(1) requires the class to be so numerous that joinder of all parties is

impracticable. Here, based on the data provided by Atlantic Union to Class Counsel, there are several thousand Settlement Class members. *See* Kaliel Decl. ¶ 27. While "no specified number is needed to maintain a class action," the size of the Settlement Class here unquestionably satisfies numerosity. *See, e.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984).

**b.**    **Commonality is satisfied.**

The "commonality" factor of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All that is needed is one common issue. *See McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992). Here, Plaintiff alleges that Atlantic Union's uniform policy of assessing "APPSN" Overdraft Fees affected all Settlement Class members. Common issues of fact and law therefore include the nature of the policy and whether the policy violates Atlantic Union's account agreement. Resolution of those issues as to Plaintiff will resolve them for the Settlement Class as well and would rely on largely the same evidence as would be necessary to prove any other Settlement Class Member's claims. *See Solomon*, 2020 WL 3490606 (finding commonality and predominance satisfied based on "a uniform scheme . . . which would rely on broadly applicable evidence").

**c.**    **Typicality is satisfied.**

To satisfy the typicality analysis, the proposed class representative must show that he or she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Typicality is satisfied if the proposed class representative's claims "fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Here, Plaintiff's claims arise from Atlantic Union's assessment of the same type of "APPSN" Overdraft Fees that Atlantic Union allegedly collected from other Settlement Class members. His interests and those of the Settlement Class are aligned because the Settlement will benefit him in the same

19

way it benefits the rest of the Settlement Class.

### d.      Adequacy is satisfied.

The final prong of Rule 23(a) requires the Court to find that the class representative and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Plaintiff does not have any known conflicts with the Class, or any "interests antagonistic to the class." *Solomon*, 2020 WL 3490606, at *2. She understands and has accepted the obligations of being a class representative, and has adequately represented the Settlement Class by reviewing the Complaint, providing documents to Class Counsel, making herself available to discuss the facts of the litigation with Class Counsel, and reviewing the Agreement. Kaliel Decl. ¶ 41.

Class Counsel has also satisfied the adequacy requirement. Class Counsel has effectively handled numerous consumer protection and complex class actions, including in the area of financial services, credit unions and banks, bank fees, and overdraft and non-sufficient funds fees specifically. *See* Kaliel Decl. ¶¶, Exs. A-C. Moreover, Class Counsel was able to secure a fantastic recovery for the Settlement Class after an efficient discovery effort, along with important injunctive relief and the costs of Settlement Administration—a testament to both their skill and reputation in the legal field. Class Counsel is qualified, experienced, and able to conduct this litigation to fully and adequately represent the Settlement Class.

### 2.      The Settlement Class also satisfies the requirements of Rule 23(b)(3).

### a.      Common issues of law and fact predominate.

The first requirement under Rule 23(b)(3) is that questions of law or fact common to class members predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Gunnells*,

348 F.3d at 428.

Here, Plaintiff and the Settlement Class seek to remedy common legal grievances based on Atlantic Union's assessment of "APPSN" Overdraft Fees. The common questions of the legality of this practice and Atlantic Union's policies associated with the practice predominate over questions—if any—affecting only individual Settlement Class members, providing a common link between all the Settlement Class members and Atlantic Union. *See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance satisfied where [t]he question in each individual controversy" would be resolved according to the same legal inquiry); *Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) (finding predominance satisfied based on the "standardized nature" of the defendant's conduct). "The fact that damages will differ from class member to class member does not defeat the finding of predominance because liability is common to the class." *Jeffreys*, 212 F.R.D. at 323.

### b.     A class action is a superior method of adjudication.

Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015). With class settlements, courts need not consider the last factor—whether the case, if tried, would present intractable management problems—for the proposal is that there will be no trial. *Amchem Prods.*, 521 U.S. at 593. Here, a class action is superior to individual class member suits.

First, individual suits are unlikely here, because the probable recovery (even of full damages) is relatively small per Settlement Class Member, particularly compared to the expense

of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8 (finding superiority satisfied where individual actions were "unlikely due to the size of probable recovery and expense of individual litigation). Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem*, 521 U.S. at 617, a suit like this is well-suited for class action litigation. Second, Class Counsel is not aware of other pending individual litigation against Atlantic Union involving "APPSN" Overdraft Fees. Kaliel Decl. ¶ 43. And third, it would promote judicial economy to resolve this case as a class before this Court rather than requiring individual plaintiffs to file separate lawsuits. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.

### C.   The Court Should Appoint Plaintiff's Counsel as Class Counsel Under Rule 23(g)

Fed. R. Civ. P. 23(g) requires a Court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). *See also In re Neustar*, 2015 WL 5674798, at *13. The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel from the law firms of Kaliel Gold PLLC; Cohen & Malad, LLP; and Branstetter, Stranch & Jennings, PLLC have expended a great deal of time, effort, and expense

investigating Atlantic Union's NSF Fee assessment practice, and contract documents, and transactional data prior to and since filing this action. Kaliel Decl. ¶ 35. It is clear from their track-record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class-action practice.

As can be seen by their commitment to prosecuting this Action thus far, Class Counsel have made the investment and have the experience to represent the Settlement Class vigorously. Accordingly, Plaintiff requests that the Court appoint Jeffrey Kaliel of Kaliel Gold PLLC; Lynn A. Toops of Cohen & Malad, LLP; and J. Gerard Stranch, IV of Branstetter, Stranch & Jennings, PLLC as Class Counsel.

### D.      The Court should approve the Notice Program.

"Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to . . ." certify the settlement class and approve the settlement. Fed. R. Civ. P. 23(e)(1)." *Solomon*, 2020 WL 3490606. The Parties' proposed Notice Program is formulated to conform with the procedural and substantive requirements of Rule 23. Due process and Rule 23 require that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). The mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standards imposed by due process.

Here, the Notice Program contemplates notice via direct mail. A Long Form Notice is also

available for Settlement Class members who request it, and it will be posted on the Settlement Website. To ensure that notice reaches as many Settlement Class members as possible, the Settlement Administrator will perform reasonable address traces for the postcard Notice following any undeliverable Email Notices.

All of the Notices will include important information about the Settlement, including how to opt-out or object, and where to find more information about the case or contact Class Counsel. The substance of the notice will fully apprise Settlement Class members of their rights. Additionally, the Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class members.  The design of the Notices follows principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notices contain plain-language summaries of key information about Settlement Class members' rights and options.   Under Rule 23(e), the notice must generally describe the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard. The proposed Notices contain all of the critical information required to apprise Settlement Class members of their rights. This approach to notice is adequate and provides sufficient detail to allow class members with adverse viewpoints to come forward and be heard.

Consistent with normal practice, prior to being delivered and published, all Notices will undergo a final edit for accuracy. All of the Notices are noticeable, clear, and concise, and are written in plain, easily understood language. The Notices effectively communicate key information about the Settlement and are designed to alert the reader that the Notices are important documents and that the content may affect them.

This robust Notice Program is informative, practical, and reasonably designed to reach the vast majority of Settlement Class members. Kaliel Decl. ¶ 25. *See also, e.g.*, *Solomon*, 2020 WL

3490606, at *6 (approving notice plan providing for email address or, if no email address is available, a postcard notice, along with a settlement website). There is no claim form, and the Notice Program will be overseen by Angeion Group, a reputable settlement administrator with deep experience in the field.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiff Hinton as Class Representative, (3) appoint Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Program and direct that Notice be provided to the Settlement Class Members, (6) approve and order the opt-out and objection procedures set forth in the Agreement, (7) stay all deadlines in the Action against Atlantic Union pending Final Approval of the Settlement, and (8) set a date for a Final Approval Hearing.

The Parties propose that the Court enter a proposed schedule according to the dates provided in the Settlement Agreement:

| Event | Calendar Days Before Final Approval Hearing |
|---|---|
| Notice Program Complete | 75 days after Preliminary Approval Order |
| Motion for Final Approval, Attorneys' Fees, Expenses, and Costs, and Service Award | 120 days after Preliminary Approval Order |
| Opt-Out Deadline | 135 days after Preliminary Approval Order |
| Deadline to Submit Objections | 135 days after Preliminary Approval Order |
| Deadline to Respond to Objections | 15 days before Final Approval Hearing |
| Final Approval Hearing | _____ ___, 2021 [No sooner than 150 days after Preliminary Approval Order] |

A proposed Preliminary Approval Order is attached as *Attachment 4* for the Court's convenience.

Date: August 23, 2021

/S/ Devon J. Munro
Devon J. Munro (VSB # 47833)
**MUNRO LAW PC**
PO Box 7205
Roanoke, VA 24019
Tel: 540-328-9416
Fax: 540-328-9290
dmunro@trialsva.com

Jeffrey Kaliel*
Sophia Gold*
**KALIEL PLLC**
1875 Connecticut Ave. NW 10th Floor
Washington, D.C. 20009
Tel: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Lynn A. Toops*
**COHEN & MALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
**BRANSTETTER, STRANCH
& JENNINGS, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gerards@bsjfirm.com

Christopher D. Jennings*
**THE JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, AR 72201
Tel: (501) 372-1300
chris@yourattorney.com

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs and the Proposed Classes*

26